**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:11-CV-00059-RLV-DCK**

MATT JENKINS,

       Plaintiff,

v.

G.C. SERVICES, L.P.,

       Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL
PLAINTIFF'S DISCOVERY RESPONSES**

Plaintiff, MATT JENKINS ("Plaintiff"), in response to Defendant G.C.SERVICE'S ("Defendant") Motion to Compel Plaintiff's Discovery Responses, states the following:

**I. Introduction**.

Defendant served Plaintiff with its First Set of Interrogatories, Requests for Admissions, and Requests for Production of Documents on or about September 6, 2011. The parties informally agreed to an extension of time to respond to the same up to and including November 7, 2011. Plaintiff served his responses on November 7, 2011 (D.E. 12, pp. 11-28).

On November 22, 2011, counsel for Defendant sent to Plaintiff, via electronic mail, a letter describing what she claimed were "discovery deficiencies." and further asked Plaintiff to respond by December 2, 2011 (D.E. 12, pp. 32-37). The letter was

[1]

attached to an e-mail from a "Jennifer L. Roach," and not from Defendant's counsel, Caren Enloe (D.E. 12, p. 31). The e-mail, having been sent from an unknown sender, was routed to Plaintiff's counsel's "spam mail" folder. Accordingly, Plaintiff was unaware of its existence. Plaintiff received nothing in the regular mail, no follow-up telephone calls, no subsequent e-mails; nothing to indicate to him that Defendant had any issues whatsoever with Plaintiff's discovery responses. On January 20, 2012, Plaintiff's counsel received his first e-mail from Defendant's counsel, advising that she had received no response the November 22, 2011 letter and attaching a proposed motion to compel (D.E. 12, p. 39). Within hours of receiving Defendant's counsel's January 20th e-mail, counsel for Plaintiff responded, informing her that he never received the referenced November 22 communication (D.E. 12, pp. 77-78). After a diligent search, Plaintiff's counsel located an email from Jennifer Roach in his "spam mail" folder.

Once aware of the purported issues with his discovery responses, Plaintiff prepared and sent supplemental responses to Defendant on January 25, 2012 (D.E. 12, pp. 92-99). On February 27, 2012, several weeks after having travelled to Defendant's counsel's office to exchange documents (because she refused to provide documents otherwise), Plaintiff received a final email from Defendant's counsel acknowledging that she had been provided with all documents responsive to Defendant's requests for production and that she would operate under the assumption that "everything has been produced." (D.E. 12, p. 101). The letter made no mention whatsoever of any outstanding discovery issues.

Three days later, on March 1, 2012, without any indication from Defendant's counsel, Defendant filed the instant motion to compel. Because Defendant's counsel

[2]

indicated no outstanding discovery issues in her February 27, 2012 e-mail (indeed, Plaintiff was led to believe his responses were satisfactory), Plaintiff is compelled to conclude that Defendant's letter of February 27, 2012, followed only three days later by Defendant's motion to compel, was a calculated, premeditated attempt to "ambush" Plaintiff in retaliation for his own motion to compel, filed two weeks earlier, on February 16, 2012. It is clear to this Plaintiff that Defendant has brought the instant motion for improper purposes; likely in an attempt to create an "offset" in the event Defendant is sanctioned for its own refusal to cooperate in discovery. Accordingly, Defendant's motion should be denied and this court should strongly consider sanctions against Plaintiff's counsel for her continued misconduct in these proceedings.

**II. Interrogatory No. 3**.

Defendant claims it "continues to take issue" with Plaintiff response to interrogatory number 3. This action is founded upon violative calls placed to Plaintiff's cellular telephone within the time frame beginning four years prior to the filing of the Complaint (D.E. 1, ¶ 12), April 28, 2011. The date four years prior is April 28, 2007.

Defendant's interrogatory seeks information dating back to April 28, 2002, and states no reason therefor, other than:

> *"The information is relevant as it may provide information related to the telephone number at issue. Defendant is informed and believes that the account was registered to Shepherd Services Company* (sic). *Further, at least one of the accounts at issue appears to have been a commercial account and not a consumer account."* (D.E. 13, p. 2)

As for its *reason*, it is impossible to tell from Defendant's confusing use of the word "account" whether the Defendant is using the word "account" in the context of a

*telephone* account, or as later inferred, a *consumer* or *commercial* account. Based upon Defendant's vague and cryptic response, on may only speculate as to Defendant claims Plaintiff's employment history is relevant to the phone *account* at issue or to some other consumer or commercial *accounts* as the Defendant seems to infer, which, under any circumstances, are irrelevant to ownership of the telephone number at issue. It would appear the Defendant simply pulled an number from its hat, and randomly asked for five years of records prior to the filing of the Complaint. Why not ten … why not twenty?

Rule 11(b) of the Federal Rules of Civil Procedure states in part:

> By presenting to the court a pleading, written
> motion, or other paper—whether by signing,
> filing, submitting, or later advocating it—an
> attorney or unrepresented party certifies that **to
> the best of the person's knowledge, information,
> and belief, formed after an inquiry reasonable
> under the circumstances** . . .

(emphasis added)

A **reasonable inquiry** reveals that Shephard Service Company, Inc. did not exist until January 24, 2005. See attached, <u>Exhibit A</u>. If Defendant is in fact *informed and believes*, as claimed, that the account was registered to Shephard Service Company, it has no relevant reason to inquire into Plaintiff's employment history dating back to 2002, some three years before Shephard Service Company Inc. came into existence. Moreover, it is believed that Defendant's counsel, Caren Enloe, has personal knowledge that Plaintiff's cellular telephone number was not registered to Shephard Service Company. If that is correct than her certification to the contrary is **false** and is a violation of Rule 11.

Defendant's counsel, Caren Enloe, represented Defendant Brachfeld Law Group in *Jenkins v. Brachfeld Law Group,* Case No. 5:10−cv−00144−RLV –DSC, filed in this

[4]

Court on September 24, 2010. See attached, <u>Exhibit B</u>. On January 4, 2011 Plaintiff Matt Jenkins filed his Motion for Partial Summary Judgment, which included as an exhibit, copies of Plaintiff's cellular telephone bill, provided to Enloe as proof of Jenkins' ownership of the "0300" phone number. See attached, <u>Exhibit C</u>. Plaintiff has attempted to locate the originals of the invoices in <u>Exhibit C</u>, but cannot locate them. Plaintiff speculates they may have actually been given to Defendant's counsel Caren Enloe and may still be in her possession.

Defendant has offered no relevant reason for demanding Plaintiff's employment history dating back to April 28, 2002, and Plaintiff can think of none, other than Defendant simply seeks to harass the Plaintiff, cause unnecessary delay, needlessly increase the cost of litigation, or simply for no other purpose than to fabricate an issue on which to base its motion to compel.

### **III. Interrogatory No. 16**.

Here, the Defendant claims:

> *"The interrogatory requests a calculation of the damages sought by the Plaintiff. No calculation of damages has been provided in either the initial disclosures or in response to the interrogatory. It is not sufficient to merely provide the categories of damages sought. Plaintiff is requested to particularly state the amount of damages sought and the method by which the same were calculated. Neither the Initial Disclosures nor the Supplemental responses provide a quantitative amount of damages or provide the number of calls the plaintiff contends violated the TCPA or the number of violations plaintiffs contends he is entitled to recover for under the North Carolina Debt Collection statutes."* (D.E. 13, p. 3)

Plaintiff had already provided, nearly six month earlier, on September 6, 2011:

> *"Damages for all violations that accrued during the time period of four (4) years prior to the date of the filing of the Complaint up to and including the date of the filing of the Complaint. I have reason to believe the evidence will show that G.C. placed more than 100 calls to my client. The method used for calculating the damages are based on the highest amount allowed by statute. 1. For violations of the TCPA my client is seeking $1,500 per violating phone call. 2. For violations of the N.C. debt collection laws, my client is seeking an award of $4,000.00 per violation for violations committed after October 1, 2009 and $2,000.00 per violation for violations all violations committed before October 1, 2009. 3. For violations of the FDCPA, my client is seeking $1,000.00. 4. We will be seeking attorney's fees and costs of litigation."* (D.E. 12, p.

Plaintiff believes he has complied as fully as possible with Defendant's request. Plaintiff has demanded a jury trial in this matter and has no crystal ball to determine with specificity the amount he may ultimately be awarded by a jury. Moreover, Defendant has offered nothing more than its own obstinate demand as proof that it is entitled to a "cast-in-stone" amount.

Other courts have held that in cases where the amount of damages is ultimately an issue for the jury to decide, the "computation" required by Rule 26(a)(1)(A)(iii) does not mean that plaintiffs must identify a specific sum to compensate them for injuries that are difficult to categorize, like anxiety or mental distress. *Wolgast v. Richards*, Case No. Case No. 05-10278-BC (E.D. Mich. August 5, 2011). In this case, the "difficult to categorize" injuries are the egregiousness of the Defendant's conduct. Here, most if not all of Plaintiff's damages may ultimately be decided by a jury. A jury may find Plaintiff is entitled to anywhere from $500 to $1500 per call; from $500 to $4,000.00 in the case of North Carolina violations, etc. Defendant's phone records, once this court compels the production thereof, may show more than 100 calls, possibly 200, or more.

[6]

Although Plaintiff cannot identify a *specific* amount, Defendant did receive notice that Plaintiff intended to seek specific categories of damages and the increments in which those damages may be awarded. Contrary to Defendant's claim, Plaintiff provided the number of phone calls he believed the evidence will show, along with specific dollar amounts of each category of damages. He even made reference to the October 1, 2009 date on which certain statutory damages increased from a maximum of $2,000.00 per violation to $4,000.00 per violation. Defendant has simply fabricated another meritless claim in retaliation to Plaintiff's own motion to compel.

**IV. Request No. 16**.

Defendant seeks "all documents concerning or relating to other collection calls received by you from other parties at telephone number (xxx) xxx-0300," and claims as its reason therefor:

> *To the extent Jenkins asserts his "bucket of minutes" was depleted or that he incurred additional charges because of GC's calls, the requested documents are relevant to establish that his cellphone routinely received calls from other creditors and collection agencies and to ascertain what calls, if any, caused plaintiff to incur additional charges.* (D.E. 13, p. 4)

Defendant necessarily infers that no calls other than calls made by other debt collectors would "deplete" Plaintiff's "bucket of minutes." It is no more relevant that Plaintiff received calls from other creditors or debt collectors than he received calls from his mother or any other person. According to Defendant, the only calls that may "deplete" Plaintiff's available minutes must come from other debt collectors. Even one call made by Defendant to Plaintiff would deplete his "bucket of minutes" thereby reducing the remaining number, even if Plaintiff received no other calls during a given billing period.

[7]

In any event, the Plaintiff need not be charged for the call in order to state a cause of action under the TCPA. *Bianchi v. Bronson & Migliaccio, LLP*, 2011 U.S. Dist. LEXIS 9881.

Finally, as indicated earlier, Defendant's counsel in her e-mail of February 27, 2012 (only three days before Defendant filed this motion), acknowledges receipt of "all documents responsive to our requests for production." (D.E. 12, p. 101) Now, as retaliation, and without notice, Defendant revives its claim that it did not receive certain documents. This request, as are the others, are brought in bad faith, and should be denied.

### V. Request No. 18.

Defendant requested "all documents received from you from any telecommunications service provider regarding telephone number (xxx) xxx-0300." (D.E. 13, p. 4) In responding to Plaintiff's objection to this request, Defendant claims to have agreed to narrow the scope to all billings and call histories regarding the 0300 account during the time period set forth in Plaintiff's Complaint. (D.E. 13, p. 4). This request remains objectionable in that is it overly broad in scope and is intended to harass the Plaintiff and impermissibly pry into his personal affairs. To the extent that Plaintiff is in possession of any such records, they may and quite possibly do, include records of phone calls to friends, relatives, doctors, lawyers and to any number of others the disclosure of which would constitute an unreasonable invasion of Plaintiff's privacy.

With that in mind, Plaintiff provided Defendant with everything deemed not objectionable and responsive to the request, the receipt of which Defendant acknowledged as being "responsive to our requests for production." (D.E. 12, p.101) Defendant, in retaliation to Plaintiff's own motion to compel has now, without notice,

[8]

changed its mind. Plaintiff would submit to this Court that Defendant's letter of February 27, 2012, wherein Defendant claims to be in possession of everything responsive to its discovery requests, necessarily voids Defendant's earlier "Rule 37" letter and subsequent "Good Faith Certification." Defendant's contention that it is permissible to allege insufficiencies, then acknowledge receipt of responsive production, and then without notice, claim otherwise and attempt to rely on the earlier document, should not be accepted by this Court. Defendant's motion should be denied.

### VI. Defendant Should Not Be Awarded Sanctions.

Clearly, the instant motion is brought in bad faith and in retaliation to Plaintiff's own motion to compel. Defendant has attempted to lull Plaintiff into a false sense of security by informing him that his requests were responsive, then only three days later, without notice, bringing this motion. Even if this Court determines that Plaintiff should provide additional documents to Defendant, sanctions are not appropriate in this instance.

The court **must not** order sanctions if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A).

Based upon Defendant's representation of February 27, 2012, this motion has been filed in without first conferring with the Plaintiff, and is brought in bad faith, for nefarious purposes. Plaintiff's nondisclosure, response, or objection is substantially justified, in part because Defendant seeks information irrelevant to the instant action, in part because this motion is brought for purposes not contemplated by Rule 37; i.e, in retaliation to Plaintiff's own motion to compel. And, other circumstances make an award

[9]

of expenses unjust. Counsel for Defendant has falsely certified that this motion is brought after reasonable inquiry and not for any improper purpose. She should not be rewarded for her dishonestly.

WHEREFORE, Plaintiff respectfully requests this Court deny Defendant's motion to compel in its entirely and award Plaintiff his costs in defending this retaliatory motion.

Dated: March 19, 2012                                  Respectfully submitted,

                                  */s/ W. Andrew LeLiever*
                                  **W. ANDREW LeLIEVER**
                                  N.C. State Bar No: 37384
                                  LELIEVER LAW, P.A.
                                  5 W. Hargett St., Ste. 206
                                  Raleigh, NC 27601
                                  Telephone: 919-906-4687
                                  lelieverlaw@hotmail.com
                                  *Counsel for Plaintiff*

[10]

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date I electronically filed the foregoing Plaintiff's Motion to Compel with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

Caren D. Enloe
MORRIS MANNING & MARTIN, LLP
P.O. Box 12768
Research Triangle Park, NC 27709
Counsel for the Defendant

Dated March 19, 2012

/s/ W. Andrew LeLiever
**W. ANDREW LeLIEVER**
N.C. State Bar No: 37384
LELIEVER LAW, P.A.
5 W. Hargett St., Ste. 206
Raleigh, NC 27601
Telephone: 919-906-4687
lelieverlaw@hotmail.com
*Counsel for Plaintiff*

[11]